**ARKANSAS BLUE CROSS AND BLUE SHIELD, A Mutual Insurance Company, Appellant,**

v.

**ST. MARY'S HOSPITAL, INC., Appellee.**

**No. 91–1097.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 11, 1991.

Decided Oct. 30, 1991.

Rehearing and Rehearing En Banc Denied Jan. 13, 1992.

Chet Roberts, Little Rock, Ark., argued (Allan W. Horne and Robert D. Cabe, on brief), for appellant.

Charles Nestrud, Little Rock, Ark., argued (Janie W. McFarlin, on brief), for appellee.

Before BOWMAN, MAGILL, and LOKEN, Circuit Judges.

MAGILL, Circuit Judge.

Arkansas Blue Cross and Blue Shield (BCBS) appeals from a declaratory judgment of the district court holding that the Employee Retirement Income Security Act of 1974 (ERISA) does not preempt the Arkansas assignment statute, as the assignment statute applies to welfare benefits payable under ERISA plans.[1] We reverse and remand to the district court for further proceedings consistent with this opinion.

I.

The Arkansas assignment statute provides that:

> All bonds, bills, notes, agreements, and contracts, in writing, for the payment of money or property, or for both money and property, *shall* be assignable.

Ark.Code Ann. § 4–58–102 (1987) (emphasis added). As interpreted by the Arkansas Supreme Court, this statute forces BCBS, as an insurer of ERISA plans, to honor all assignments of insurance benefits made by plan beneficiaries. *American Medical Int'l v. Arkansas Blue Cross & Blue Shield*, 299 Ark. 514, 773 S.W.2d 831, 834 (1989). Prior to this state court interpretation of the assignment statute, BCBS had the contractual right to determine who received payment of welfare benefits:

> No assignment of benefits under this Certificate shall be valid until approved and accepted by the Plan. The Plan reserves the right to make payment of benefits, in its sole discretion, directly to the provider of service or to you.

*Arkansas Blue Cross & Blue Shield v. St. Mary's Hosp., Inc.*, No. LR–C–90–89, Mem. & Order at 2 n. 2 (E.D.Ark. Dec. 19, 1990). BCBS used this contractual right to disapprove assignments made to health care providers who refused to sign a participation agreement with BCBS. St. Mary's Hospital, Inc. (St. Mary's), appellee, was such a provider. When a plan beneficiary of a BCBS-insured plan received services from St. Mary's, BCBS would pay the insurance benefits directly to the beneficiary. St. Mary's thus had the inconvenience of attempting to collect from the beneficiary. St. Mary's challenged this BCBS practice in state court. *American Medical Int'l*, 773 S.W.2d at 834. The Arkansas Supreme Court found for St. Mary's, holding that the assignment statute gave insureds the unconditional right to assign their welfare benefits. *Id.; see also American Medical Int'l v. Arkansas Blue Cross & Blue*

---

1. ERISA, 29 U.S.C. §§ 1001–1461 (1988), is a comprehensive statute that sets certain uniform standards and requirements for employee benefit plans. ERISA covers both pension benefit plans, which provide employees with retirement income, *id.* § 1002(2)(A), and welfare benefit plans, which provide employees with health, legal, vacation, or training benefits, *id.* § 1002(1). This case deals only with the application of the assignment statute to welfare benefit plans.

*Shield,* No. E 87–414 (Ark.Ch.Ct. Aug. 26, 1991) (interpreting supreme court's decision on remand). Consequently, BCBS now must pay plan welfare benefits to whomever the plan beneficiaries assign this right, including St. Mary's.

BCBS challenged this application of the assignment statute to ERISA plans by bringing a declaratory judgment action in federal district court. BCBS argues that ERISA preempts this application of the statute. The ERISA preemption provision provides that:

> [T]he provisions of [ERISA] shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan....

29 U.S.C. § 1144(a) (emphasis added). St. Mary's brought a motion to dismiss BCBS's action for declaratory judgment and BCBS filed a cross-motion for summary judgment.

The district court granted St. Mary's motion to dismiss, ruling that the assignment statute does not "relate to" ERISA plans merely because it negates a plan provision and has some economic impact on the plan. The court also found that the assignment statute did not affect the relationship between the plan participants or impact the administration of the plan. *Arkansas Blue Cross & Blue Shield,* No. LR–C–90–89, Mem. & Order at 5–6. Because ERISA preemption is a question of federal law involving statutory interpretation, we review the district court's decision de novo. *Boise Cascade Corp. v. Peterson,* 939 F.2d 632, 636 (8th Cir.1991); *Local Union 598, Plumbers & Pipefitters Indus. Journeymen & Apprentices Training Fund v. J.A. Jones Constr. Co.,* 846 F.2d 1213, 1218 (9th Cir.), *aff'd mem.,* 488 U.S. 881, 109 S.Ct.

210, 102 L.Ed.2d 202 (1988). For the following reasons, we reverse.

## II.

The first issue a court must address when deciding ERISA preemption cases, and the only issue before this court, is whether the state law in question "relates to" ERISA plans.[2] The Supreme Court broadly interpreted the "relates to" language of the ERISA preemption provision in *Shaw v. Delta Air Lines,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). The Court gave effect to the plain meaning of this language and stated that a law "relates to" an employee benefit plan "if it has a connection with or reference to such a plan." *Id.* at 96–97, 103 S.Ct. at 2899–900. The Court, however, also noted that "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Id.* at 100 n. 21, 103 S.Ct. at 2901 n. 21. The standard articulated in *Shaw* does not, and was not intended to, provide courts with a foolproof method for determining on which side of the preemption line a specific state statute falls.

Consequently, subsequent cases have relied on a variety of factors when determining whether a state statute of general application "relates to" ERISA plans.[3] These factors include whether the state law negates an ERISA plan provision, *Baxter v. Lynn,* 886 F.2d 182, 185 (8th Cir.1989), whether the state law affects relations between primary ERISA entities, *Firestone Tire & Rubber Co. v. Neusser,* 810 F.2d 550, 556 (6th Cir.1987); *Sommers Drug Stores v. Corrigan Enters.,* 793 F.2d 1456, 1467 (5th Cir.1986), whether the state law impacts the structure of ERISA plans,

---

2. Even if the assignment statute "relates to" ERISA plans, it may be "saved" from preemption by 29 U.S.C. § 1144(b)(2). This ERISA provision provides that "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance...." *Id.* We do not decide whether ERISA preempts the Arkansas assignment statute because the district court must first address whether the assignment statute is a state law that regulates insurance.

3. Statutes of general application, such as the Arkansas assignment statute, can be distinguished from statutes that actually or implicitly refer to ERISA plans. Courts have treated these statutes as having a "reference to" ERISA plans. *See, e.g., Mackey v. Lanier Collections Agency & Serv.,* 486 U.S. 825, 829, 108 S.Ct. 2182, 2185, 100 L.Ed.2d 836 (1988).

*United Food & Commercial Workers v. Pacyga,* 801 F.2d 1157, 1160 (9th Cir.1986), whether the state law impacts the administration of ERISA plans, *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 9–10, 107 S.Ct. 2211, 2216–17, 96 L.Ed.2d 1 (1987), whether the state law has an economic impact on ERISA plans, *Aetna Life Ins. Co. v. Borges,* 869 F.2d 142, 147–48 (2d Cir.1989), whether preemption of the state law is consistent with other ERISA provisions, *Mackey v. Lanier Collections Agency & Serv.,* 486 U.S. 825, 832–40, 108 S.Ct. 2182, 2186–90, 100 L.Ed.2d 836 (1988), and whether the state law is an exercise of traditional state power, *Aetna Life Ins. Co.,* 869 F.2d at 148; *Firestone Tire & Rubber Co.,* 810 F.2d at 555.

This court agrees that all these factors can be relevant to an ERISA preemption analysis. Like any list of factors, however, they only serve to focus and clarify the court's analysis. The court must still look to the totality of the state statute's impact on the plan—both how many of the factors favor preemption and how heavily each individual factor favors preemption are relevant.

We do not believe that any one factor, by itself, is determinative of the ERISA preemption issue before the court today. Rather, given the aggregate of these factors, we find that the Arkansas assignment statute "relates to" ERISA welfare benefit plans. We will discuss each of these factors in turn.

### A. Negation of a Plan Provision

■ BCBS argues that because the assignment statute negates a proper provision of an ERISA plan, the statute "relates to" ERISA plans. According to BCBS, once the court finds that a state law invalidates a plan provision, the court need not further analyze the law's impact on the plan. We decline to adopt negation of a plan provision as determinative of the preemption issue. Adoption of this standard could open the door for abuse of the ERISA preemption provision. As the district court noted, if negation of a plan provision was the standard for ERISA pre-

emption, parties could avoid any state law by including a contrary provison in an ERISA plan. *Arkansas Blue Cross & Blue Shield,* No. LR–C–90–89, Mem. & Order at 5. Additionally, we do not believe that the statutory language or case law mandates such a rule.

■ Although arguably any statute that negates a plan provision "relates to" the plan, the Supreme Court has rejected carrying this language to its logical limits. In *Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21, the Court stated that "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." Accordingly, a court must also address the relationship of the negated plan provision to the plan as a whole when determining if the state law's effect is "tenuous, remote, or peripheral."

Additionally, in *FMC Corp. v. Holliday,* ––– U.S. –––, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990), the Supreme Court implicitly rejected negation of a plan provision as a sufficient basis for preemption. In *FMC,* the Supreme Court was faced with a state statute that negated a subrogation provision contained in an ERISA plan. Rather than relying on negation of the plan provision as a sufficient basis for preemption, however, the Court analyzed the statute's impact on plan administration. *Id.* 111 S.Ct. at 408–09; *see also MacLean v. Ford Motor Co.,* 831 F.2d 723 (7th Cir.1987) (court did not rely solely on the negation of a plan term in finding that ERISA preempted state testamentary law).

BCBS argues that the Eighth Circuit adopted a negation standard for preemption in *Baxter,* 886 F.2d at 185 (citing *Davis v. Line Constr. Benefit Fund,* 589 F.Supp. 146 (W.D.Mo.1984)). We do not read *Baxter* as adopting such a test. Although the *Baxter* court stated that "any provision of state law which conflicts with a proper provision of an ERISA plan must give way to the latter," the court also relied on the state law's impact on the plan's structure in reaching its conclusion. *Id.* Additionally, the court cited a Ninth Circuit case that had found ERISA preemp-

tion of a state subrogation statute nearly identical to the statute before the *Baxter* court. *Id.* (citing *United Food & Commercial Workers v. Pacyga,* 801 F.2d 1157, 1160 (9th Cir.1986)). In this case, the Ninth Circuit concluded that the state subrogation law "relates to" the ERISA plan because the law impacts the plan's structure; this case does *not* stand for the proposition that negation of a plan provision is a sufficient basis for preemption.

In sum, although negation of a proper plan provision is not determinative of ERISA preemption, the assignment statute's negation of the non-assignment clause does support a finding that the statute "relates to" ERISA plans.

### B. Effect on Primary ERISA Entities and Impact on Plan Structure

■ In analyzing ERISA preemption issues, some courts have discussed the state law's effect on the relationship of primary ERISA entities—the employer, the plan, the plan fiduciaries, and the beneficiaries. *Sommers Drug Stores,* 793 F.2d at 1467. Other courts rely on the law's impact on the structure of ERISA plans. *United Food & Commercial Workers,* 801 F.2d at 1160. For purposes of analyzing whether the assignment statute "relates to" ERISA plans, we treat these two factors as identical.[4]

We believe that this factor strongly supports a finding that the assignment statute "relates to" ERISA plans. By negating a

non-assignment clause, the assignment statute takes from the claims administrator who is a plan fiduciary, *e.g., Buehler Ltd. v. Home Life Ins. Co.,* 722 F.Supp. 1554, 1562–63 (N.D.Ill.1989); *Benvenuto v. Connecticut Gen. Life Ins. Co.,* 643 F.Supp. 87, 90 (D.N.J.1986), and gives to the beneficiaries control over who should receive payment of ERISA-plan welfare benefits.[5] The claims administrator no longer can pay the beneficiary rather than the assignee—regardless of whether its motivation in doing so is to provide leverage for bargaining with providers, to enforce a co-payment provision,[6] to avoid a conflicting assignment, to simplify procedures by issuing a single check, or to meet some other need. This change in plan structure and in the relationship between primary ERISA entities is not a "tenuous" impact on the plan. Simply because it is St. Mary's, as assignee, and not the plan beneficiaries, as assignors, who is challenging ERISA preemption does not change this fact.

### C. Impact on Administration

A state statute can have both an intrastate and interstate impact on the administration of ERISA plans. We discuss these factors separately.

#### 1. Intrastate Impact on Plan Administration

■ By giving the plan beneficiaries sole control of assignments, the assignment statute imposes on the claims administrator

---

**4.** With respect to many ERISA preemption issues, these two factors are essentially two different ways of articulating the same impact on ERISA plans. For example, in *United Food & Commercial Workers,* the Ninth Circuit held that a state subrogation law "relates to" ERISA plans because it "prohibit[s] employers from structuring their employee benefit plans in a manner that requires reimbursement in the event of recovery from a third party." 801 F.2d at 1160. Alternatively, the court could have stated that the law "relates to" ERISA plans because it affects the relationship of ERISA entities by taking from the plan and giving to the beneficiaries the right to any recovery from third parties.

**5.** Presumably, BCBS is the party who grants or denies claims and then issues payment in most BCBS-insured ERISA plans. Our conclusion

that this factor supports preemption, however, does not change if some other party, such as the employer, is the claims administrator.

**6.** An insurer may use a non-assignment clause to help enforce an insurance co-payment provision. Some insurers provide for a co-payment structure to make beneficiaries more aware of health costs and limit unnecessary use. *See Kennedy v. Connecticut Gen. Life Ins. Co.,* 924 F.2d 698, 699 (7th Cir.1991). To avoid this structure, the provider can increase the cost of its services and then waive the beneficiaries' co-payment. *Id.* One tool insurers can use to prevent this practice is to refuse to honor the insured's assignment of benefits. This forces providers to collect directly from the insured, increasing the provider's risk of noncollection and discouraging the provider from evading the co-payment structure.

the burden of determining whether and to whom the plan beneficiaries have made assignments and then paying the appropriate parties. St. Mary's argues that this impact on plan administration is "tenuous, remote, and peripheral" because a mechanism is in place for notifying claims administrators of assignments to health care providers and, in fact, the normal procedure for claims administrators is to pay the health care provider. The mechanism used to notify administrators of assignments to health care providers is a UB–82 form. J.A. at 110. Rather than relying on this indicator of assignment when processing claims, however, BCBS looks to the contract with the insured and the participating status of the provider to determine whether the provider or the insured is paid. J.A. at 111. Thus, application of the assignment statute to BCBS-administered plans would require that BCBS now rely on the UB–82 forms when processing claims.[7]

An additional burden is that beneficiaries could pay a provider with personal funds and assign their welfare benefits to third parties. Such assignments would create numerous administrative hassles because there is no mechanism for providing the insurer with notice of these assignments and, potentially, the administrator would have to cope with conflicting assignments. Unfortunately, the record contains no evidence on the likelihood of third-party assignments by plan beneficiaries. Clearly, if health care providers required prepayment, assignment of welfare benefits to third parties would be more likely to occur. Given that BCBS's participation agreements prohibit providers from requiring prepayment, J.A. at 111, and that BCBS can refuse to honor assignments, historically there has been little opportunity for the beneficiaries of BCBS-insured plans to make third-party assignments. Absent preemption of the assignment statute, however, BCBS would have to honor such assignments and health care providers would have no incentive to enter into provider agreements that prohibited prepayment re-

quirements. Under these circumstances, it is safe to assume that third-party assignments would increase and the corresponding administrative burden also would increase.

Courts apparently disagree whether a state statute that dictates how an administrator should distribute plan benefits has more than a tenuous impact on plan administration. The Seventh Circuit, in *MacLean*, 831 F.2d at 728, indicated that such an impact is not tenuous. The *MacLean* court held that ERISA preempted state testamentary law because this law required the plan administrator to distribute the deceased employee's pension assets according to the employee's will rather than according to the method provided for in the plan. *Id.* Likewise, the assignment statute requires BCBS to distribute welfare benefits according to the beneficiaries' assignments rather than according to the method provided for in the ERISA plans. As the Seventh Circuit stated, this type of state law impact "interferes with the administration of the Plan." *Id.* On the other hand, *Mackey*, 486 U.S. at 831–40, 108 S.Ct. at 2186–90 (state garnishment law), and *Aetna Life Ins. Co.*, 869 F.2d at 147 (state escheat law), both found that state statutes affecting benefit distribution did not "relate to" ERISA plans. Both these cases, however, are distinguishable. Unlike the Arkansas assignment statute, state garnishment and escheat statutes do not shift control over benefit distribution. Neither do they negate a proper ERISA provision. Additionally, in *Mackey*, the Supreme Court significantly relied on a "sue and be sued" clause in the ERISA statute as support for its holding. The Court reasoned that because the "sue and be sued" clause contemplates execution of judgments but does not provide a method for doing so, state law methods for collecting money judgments must remain undisturbed. *Mackey*, 486 U.S. at 833–34, 108 S.Ct. at 2187. This "sue and be sued" language is not applicable to the voluntary assignment of ERISA benefits.

7. It is possible that BCBS is not the claims administrator of all BCBS-insured ERISA plans. The record does not indicate what procedures are used by other claims administrators of BCBS-insured plans.

Accordingly, *Mackey* does not control the issue before this court.

In sum, we believe that the assignment statute has an impact on intrastate plan administration. Although, in practical effect, this impact may not greatly burden plan administration and thus in itself would not be sufficient to justify preemption, we believe that this factor supports a finding that the assignment statute "relates to" ERISA plans.

### 2. Interstate Impact on Plan Administration

■ State laws also can have an interstate administrative impact on ERISA plans because multi-state plans would be subject to the potentially conflicting laws of fifty different states. When an interstate administrative impact exists, it is a factor that strongly favors preemption. The Supreme Court has recognized that a main purpose of enacting ERISA and providing for pervasive federal preemption was to protect plan participants from the threat of conflicting and inconsistent state regulation. *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 9–10, 107 S.Ct. 2211, 2216–17, 96 L.Ed.2d 1 (1987). The Court noted that "[t]he most efficient way to meet these responsibilities is to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and *disbursement of benefits*." *Id.* at 9, 107 S.Ct. at 2216 (emphasis added). Like intrastate administrative impact, however, some interstate administrative impact may be only tenuous. *Aetna Life Ins. Co.*, 869 F.2d at 147–48.

The record does not contain evidence on the interstate administrative impact of state assignment statutes. Clearly, some non-conformity is possible. For example, state laws may differ regarding the ability to limit contractually the right of assignment, when an assignment is valid, when and what type of notice must be given to the obligor, and the priority of conflicting assignments. Such inconsistencies could raise numerous administrative difficulties for multi-state ERISA plans. Thus, although there is insufficient evidence for

this factor to be dispositive of preemption, we believe that it supports a finding that the Arkansas assignment statute "relates to" ERISA plans.

### D. Economic Impact

■ The district court noted that "a state law does not 'relate to' an ERISA plan merely because the law would have some economic impact on the plan." *Arkansas Blue Cross & Blue Shield*, No. LR–C–90–89, Mem. & Order at 6 (citing *Rebaldo v. Cuomo*, 749 F.2d 133 (2d Cir. 1984)). We agree that "tenuous, remote, and peripheral" economic impact on ERISA plans, in itself, is not sufficient to find preemption. Like all the factors considered, however, simply because the existence of some economic impact is not dispositive of the preemption issue does not make this factor irrelevant to the preemption inquiry. In fact, this factor is highly relevant to whether the assignment statute "relates to" ERISA plans.

By requiring claims administrators to honor assignments to non-participating providers, the assignment statute eliminates the health care providers' incentive to enter into participation agreements. Accordingly, the issue is whether participation agreements collectively can have an economic impact on ERISA plans. We believe they can. For example, BCBS uses participation agreements to implement a hospital reimbursement program developed around the concept of reimbursing a "fair market price for a defined unit of service." J.A. at 38–39. The principal intent of this program is to reward efficient providers of services and provide incentives for hospitals with charges exceeding peer group norms to strive to bring the price of their services back within reasonable limits. *Id.* By promoting efficiency, BCBS hopes to obtain lower health care costs. Whether lower health costs would result in lower premiums for employers, higher benefits for employees, higher profits for the insurer, or some combination of these consequences, *cf. Aetna Life Ins. Co.*, 869 F.2d at 147 (discussing economic impact of state es-

cheat statute), there is an economic impact on ERISA plans.

Although BCBS did not present any evidence that its program has been successful,[8] we find it highly unlikely that health care providers, such as St. Mary's, would refuse to enter participation agreements if doing so had no economic impact.[9] Moreover, giving effect to the assignment statute forecloses BCBS from further refining its program and prevents other ERISA-plan insurers and employers from instigating programs that use participation agreements to control health care costs. We do not believe that Congress could comprehensively preempt all state laws that relate to ERISA plans, but still leave the door open for states to strike a fatal blow to participation agreements. Accordingly, this factor supports a finding that the assignment statute "relates to" ERISA plans.

### E. Other Statutory Provisions

■ Another factor helpful in determining an ERISA preemption question is whether ERISA preemption of the state law in question is consistent with other relevant ERISA provisions. Arguably, one such provision is 29 U.S.C. § 1056(d)(1), which provides that "each pension plan shall provide that benefits provided under the plan may not be assigned or alienated." Although the Supreme Court found this provision relevant in addressing ERISA preemption of state garnishment laws, *Mackey*, 486 U.S. at 837, 108 S.Ct. at 2189, the Court's analysis does not apply to assignment statutes.

In *Mackey*, the Supreme Court reasoned that because Congress expressly prohibited assignment of pension benefits, but did not expressly prohibit assignment of welfare benefits, Congress must have intended to allow garnishment of welfare benefits. This reasoning is not applicable to the Arkansas assignment statute. Congress' failure to dictate the assignability or non-assignability of welfare benefits does not mean that Congress left the door open for states to impose such a rule. If Congress intended that a mandatory rule govern the assignment of welfare benefits, it could have easily provided for such a rule, as it did in the case of pension benefits. On the other hand, if Congress intended that ERISA participants could negotiate plan provisions governing the right to assign welfare benefits, it is more likely that Congress would say nothing at all about welfare benefit assignment. This same logic does not apply to ERISA's failure to address garnishment of welfare benefits. Because the creditors of beneficiaries are not parties to ERISA plans, an ERISA plan provision cannot govern a creditor's right to garnishment. Thus, Congress could not have intended that ERISA plans govern the right of creditors to garnish benefits.

*American Medical Int'l v. Arkansas Blue Cross & Blue Shield,* No. E 87–414, Final Decree at 3 (Ark.Ch.Ct. Aug. 26, 1991). The state court also stated that the method employed by BCBS "would certainly have some effect" on health care costs. *Id.* Accordingly, the state court must have found this effect insufficient to override the Arkansas assignment statute on public policy grounds. Because this court is asking a different question—whether the use of non-assignment clauses in general could have a sufficient economic impact on ERISA plans to support a finding that the assignment statute is "related to" ERISA plans—the state court ruling is not dispositive.

---

**8.** St. Mary's argues that BCBS admitted in Interrogatory No. 8, J.A. at 42, that there was no economic impact associated with the non-assignment clause. Tr. at 13. This interrogatory asked whether BCBS's ability to hold down health care costs would be impaired if BCBS lost subscribers and/or insureds. We do not read BCBS's response of "no" as an admission that the non-assignment clause has no economic impact on ERISA plans. BCBS's argument as to economic impact relates to the loss of participating providers, not to the loss of subscribers and/or insureds. Additionally, BCBS consistently asserted and explained the economic impact of the non-assignment clause in its response to other interrogatories. J.A. at 37–42.

St. Mary's also relies on the state court action between St. Mary's and BCBS to support its argument that the non-assignment clause does not have an economic impact. The state court ruled that BCBS failed to prove that its program was an effective method of reducing costs.

**9.** In fact, one reason St. Mary's refused to enter a participation agreement is that it would have prohibited St. Mary's from proceeding against the plan beneficiaries for monies due St. Mary's over and above the policy limits. *See American Medical Int'l,* No. E 87–414, Final Decree at 3.

A further factor distinguishing *Mackey* is that ERISA preemption of state garnishment laws would essentially prohibit all involuntary assignments of pension and welfare benefits. Thus, the preemption provision would largely overlap the pension benefit anti-assignment provision. *Mackey*, 486 U.S. at 837, 108 S.Ct. at 2189. ERISA preemption of state assignment statutes, on the other hand, will not preclude the voluntary assignment of welfare and pension benefits. ERISA plans could still allow voluntary assignments. Therefore, the pension benefit anti-assignment provision remains necessary to prohibit the assignment of pension benefits.

In fact, the pension benefit anti-assignment provision actually supports a finding that the assignment statute "relates to" ERISA plans. The legislative history of ERISA indicates that Congress intended to preempt the field of employee benefit law. *See Shaw*, 463 U.S. at 99, 103 S.Ct. at 2901 (citing from 120 Cong.Rec. 29197, 29933 (1974)). The fact that Congress explicitly addressed the assignability of pension benefits in ERISA indicates that the issue of benefit assignment, whether pension or welfare, is within the area of law Congress intended to preempt.

### F. Exercise of Traditional State Power

█ We reject St. Mary's argument that preemption is not appropriate because the assignment statute is an exercise of traditional state power. *See Boise Cascade Corp. v. Peterson*, 939 F.2d 632, 637–38 (8th Cir.1991) (rejecting the state's argument that ERISA does not preempt a state minimum jobsite ratio rule because it fell within the traditional state area of protecting public safety). Like the Fifth Circuit, we are "not convinced that ... the traditional or nontraditional nature of the state law ... properly bears upon the question whether a state law of general application affects a benefit plan in so tenuous, remote, or peripheral a way that it cannot be said to 'relate to' the plan." *Sommers Drug Stores*, 793 F.2d at 1468; *see also Gilbert v. Burlington Indus.*, 765 F.2d 320, 327 (2d Cir.1985) ("to avoid preemption it is not sufficient that the state statute

represent the exercise of a traditional state police power...."). Although the Supreme Court has not discussed the relevance of this factor, its failure to consider this criterion when deciding ERISA preemption cases is telling. *See FMC Corp. v. Holliday*, —— U.S. ——, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990) (state subrogation law); *Mackey v. Lanier Collections Agency & Serv.*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988) (state garnishment law).

Although a state law's relationship to traditional state authority is not relevant to whether a state statute "relates to" ERISA plans, this factor arguably is a policy consideration useful in deciding borderline questions of ERISA preemption. Assuming that ERISA preemption of the assignment statute is such a case, this factor does not strongly favor a finding of no preemption. St. Mary's argues that assignment statutes are within the traditional province of states because such laws have been on the books for a long time and are of general applicability. We do not find either of these factors persuasive. ERISA preemption of the assignment statute would not render the law invalid, but would only prohibit application of the law to ERISA-plan welfare benefits. Given that the Arkansas Insurance Department authorized BCBS's hospital reimbursement program, which utilizes non-assignment clauses, J.A. at 38, we do not believe that Arkansas has a strong interest in preventing parties from contractually limiting the right to assign ERISA-plan welfare benefits.

Alternatively, St. Mary's argues that because one goal of BCBS's non-assignment clause is to keep health care costs down and regulation of health care costs is an area of traditional state concern, ERISA must not preempt the state assignment statute. To support this argument, St. Mary's relies on *Rebaldo v. Cuomo*, 749 F.2d 133 (2d Cir.1984), which held that ERISA does not preempt a state statute directly regulating health care costs. *Id.* at 138. This argument is misplaced. The Arkansas assignment statute does not directly regulate health care costs. The only arguable impact the assignment statute

has on health care costs is that it prevents BCBS, and any other ERISA-plan insurer or employer who may want to do so, from using a non-assignment clause as leverage when negotiating with health care providers. Interference with such negotiations is not an area of traditional state concern. Even if it were, such interference is certainly not the intended purpose of the assignment statute.

In sum, we do not believe that whether the assignment statute is an exercise of traditional state authority favors or disfavors a finding of preemption.

### III.

In summary, we reverse the district court and hold that the assignment statute "relates to" ERISA plans. We do not find any one of the above factors, in itself, determinative of the issue before the court. Rather, we base our decision on the totality of the statute's impact—negation of a proper plan provision, impact on the relationship of primary ERISA entities, impact on the intrastate and interstate administration of ERISA plans, and economic impact on the plan. It is all of these factors together that make the assignment statute's affect on ERISA plans not "tenuous, remote, or peripheral."

We remand to the district court the issue of whether BCBS waived the preemption issue by not raising it in the state court proceedings. If waiver is found, BCBS is bound by the state court judgment for damages, but not by the injunction requiring BCBS to honor all assignments of ERISA-plan welfare benefits. We also remand to the district court the issue of whether the assignment statute is saved from ERISA preemption under 29 U.S.C. § 1144(b)(2), as a state law regulating insurance. If the district court finds that the assignment statute is not preempted, the state court judgment is fully effective.