Patrick **BOYLE**, James Daugherty, Thomas R. Frantes, P. Dan Gilbert, Charles Maloney, Thomas Martin, Robert Schwartzbauer, and Gary Thaden, as the Board of Trustees of the Twin City Pipe Trades Welfare Trust, et al., Plaintiffs,

v.

Morris **ANDERSON**, in his capacity as the Commissioner of the Minnesota Department of Revenue, et al., Defendants.

Civ. No. 3–93–359.

United States District Court, D. Minnesota, Third Division.

April 12, 1994.

William A. Cumming, Hessian McKasy Soderberg, Mpls., MN, for plaintiffs.

Richard S. Slowes, Minnesota Atty. Gen.'s Office, St. Paul, MN, for defendants.

## MEMORANDUM AND ORDER

MAGNUSON, District Judge.

## I. INTRODUCTION

█ This matter is before the Court upon Plaintiffs' Motion for Summary Judgment.

Asserting that there are no genuine issues of material fact, Plaintiffs move for summary judgment and ask this Court for a permanent injunction barring the State of Minnesota from enforcing certain provisions of Minnesota statutes with respect to Plaintiffs. Defendants agree that there are no genuine issues of material fact in this matter and request that summary judgment be granted in favor of Defendants. For the following reasons, the Court enters summary judgment in favor of Defendants.[1]

## II. BACKGROUND

The Minnesota Legislature enacted the Minnesota Health Right Act, now commonly known as MinnesotaCare, in April of 1992. In passing this law, legislators sought to reduce health care costs and to make health care available for all Minnesotans. Plaintiffs in this case include the trustees of thirteen welfare benefit plans ("Plans") that provide health care benefits for a large number of individuals, primarily union members and their dependents. The Plans were created and operate under the provisions relating to welfare benefit plans in the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.* They are funded through contributions by the covered workers and their employers. (Pltfs.' Memo. Supp.Summ.J. at 2.) Plaintiffs brought this action seeking a declaratory judgment that portions of MinnesotaCare are preempted by ERISA and the Labor Management Relations Act (LMRA), 29 U.S.C. § 141, *et seq.*

Plaintiffs present three main arguments in support of their Motion for Summary Judgment. First, the Plaintiffs challenge collection and reporting provisions of the MinnesotaCare Act on the grounds that those provisions are preempted by ERISA. Second, they contend that the spending caps set forth in the act are also preempted by ERISA. Plaintiffs' primary challenge to the statute, however, centers around a two percent provider tax. They argue that the provider tax is preempted by ERISA and LMRA insofar

---

1. Summary judgment may be granted in favor of a nonmoving party. *See Hyamstad v. Suhler,* 727 F.Supp. 511, 520 (D.Minn.1989), *aff'd,* 915 F.2d 1218 (8th Cir.1990); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986) ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte,* so long as the losing party was on notice that she had to come forward with all of her evidence.")

as that tax is passed on to health benefit plans covered by those federal statutes.

The provider tax, while not the only means of funding the MinnesotaCare programs,[2] is the only tax challenged by the Plaintiffs in this case. The tax is passed through from hospitals and other health care providers to third parties in two ways. First, under the statute, a provider is permitted to transfer the two percent tax to third-party purchasers, including employee benefit plans such as Plaintiffs. The provision states as follows:

A hospital, surgical center, pharmacy, or health care provider that is subject to a tax under section 295.52 may transfer additional expense generated by section 295.52 obligations on to all third-party contracts for the purchase of health care services on behalf of a patient or consumer. The expense must not exceed two percent of the gross revenues received under the third-party contract, including copayments and deductibles paid by the individual patient or consumer.... All third-party purchasers of health care services ... must pay the transferred expense in addition to any payments due under existing or future contracts with the hospital, surgical center, pharmacy, or health care provider, to the extent allowed under federal law. Nothing in this subdivision limits the ability of a hospital, surgical center, pharmacy, or health care provider to recover all or part of the section 295.52 obligation by other methods, including increasing fees or charges.

Minn.Stat. § 295.582 (Supp.1993).

As suggested by the last sentence in this provision, the second way in which providers may pass the two percent tax through to third parties is by increasing their overall charges for health care services. Under this method, third-party purchasers do not receive a separate itemized charge for the provider tax. They are, however, forced to pay higher amounts for the services than they would have before the passage of MinnesotaCare. (Pltfs.' Memo.Supp.Summ.J. at 7–8; Defs.' Memo.Opp.Summ.J. at 4–5.)

## III. DISCUSSION

Summary judgment is appropriate if there is no genuine issue of material fact and a party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Unigroup, Inc. v. O'Rourke Storage & Transfer Co.,* 980 F.2d 1217, 1219–20 (8th Cir.1992). As the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555.

### A. ERISA Claims

In passing ERISA, Congress sought to free employee benefit plans from conflicting regulations by different states. ERISA contains broad preemption provisions, which are designed to provide a single uniform set of regulations for the administration of employee benefit plans. *See Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 9, 107 S.Ct. 2211, 2216, 96 L.Ed.2d 1 (1987). The statute reads as follows: "[T]he provisions of this subchapter ... shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a). In interpreting this provision, the Supreme Court has held that the phrase "relate to" should be "construed expansively." *Id.* at 8, 107 S.Ct. at 2215.

■ Notwithstanding this broad interpretation of the statute, however, the Supreme Court has "recognized limits to ERISA's preemption clause." *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990). For example, in *Mackey v. Lanier Collection Agency & Serv., Inc.,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), the Supreme Court held that the clause did not preempt a state general garnishment statute, and in *Fort Halifax,* 482 U.S. at 19, 107 S.Ct. at 2221, it determined that a state severance pay stat-

---

**2.** Among the sources of funding for the MinnesotaCare law are a cigarette tax increase and a two percent tax on gross revenues of hospitals, surgical centers, pharmacies, and wholesale drug distributors. Ch. 549, 1992 Minn.Laws 1616–17; Minn.Stat. § 295.52.

ute was not preempted by ERISA. "ERISA pre-emption analysis 'must be guided by respect for the separate spheres of governmental authority preserved in our federalist system.'" *Id.* (quoting *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 522, 101 S.Ct. 1895, 1905, 68 L.Ed.2d 402 (1981)). There is a general presumption that "Congress did not intend for ERISA to preempt areas of traditional state regulation." *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 740, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985). The Supreme Court has indicated that ERISA does not preempt "a generally applicable statute that makes no reference to, or indeed functions irrespective of, the existence of an ERISA plan." *Id.* It has also noted that "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983).

### 1. Data Collection and Reporting

The Plaintiffs argue first that the data collection and reporting provisions of the MinnesotaCare Law are preempted by ERISA because "they represent direct regulation of Plaintiffs' plans." (Pltfs.' Memo. Supp.Summ.J. at 15.) The reporting requirements are found in Minn.Stat. §§ 62J.35 and 62J.38. Section 62J.35 provides that "the commissioner [of the Minnesota Department of Health] may collect from health care providers data on patient revenues and health care spending during a time period specified by the commissioner." Section 62J.38 states that "[t]he commissioner shall require group purchasers to submit detailed data on total health care spending...." To implement these provisions, the Commissioner promulgated emergency rules regarding the data collection and reporting requirements. Minn.R. pt. 4652.0110 provides, in pertinent part, as follows:

> The following group purchasers, as defined under part 4652.0100 [Emergency], subpart 14, are subject to the reporting requirements established by part 4652.-0120 [Emergency]: all insurance companies ... that reported $10,000 or more in total health premiums to the Department

of Commerce in 1991; and all health service plan corporations.... Employee health plans offered by self-insured employers will be encouraged to comply with these reporting requirements.

As the statute is currently enforced, therefore, the Plaintiffs are not required to submit health care revenue and expenditure data; they are merely "encouraged" to do so.

In response, the Defendants argue that, because the Plaintiffs "are not compelled by the statute or rule to provide any data," there is "nothing to preempt." (Defs.' Memo.Opp.Summ.J. at 11.) Plaintiffs assert that "if the State does not intend to seek such information from the plaintiffs, the State should not oppose an injunction which makes clear that the collection of such information is preempted by ERISA." (Pltfs.' Reply Memo.Supp.Summ.J. at 4.)

 Plaintiffs' challenge to the data reporting provisions has two flaws. First, Plaintiffs do not have standing to challenge the statute and rule. As the Supreme Court stated in *Lujan v. Defenders of Wildlife,* —— U.S. ——, ——, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992), a plaintiff must satisfy three elements to establish standing.

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally-protected interest which is (a) concrete and particularized ... and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" ... Second, there must be a causal connection between the injury and the conduct complained of.... Third, it must be "likely" ... that the injury will be "redressed by favorable decision."

The Plaintiffs bear the burden of proof on each of these elements, and the elements are an "indispensable part of the plaintiff[s'] case." *Id.* Where plaintiffs challenge a governmental regulation of others but are not themselves subject to such regulation, "standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." *Id.* —— U.S. at ——, 112 S.Ct. at 2137. In the instant case, Plaintiffs have failed to show that they are in any way injured by the reporting requirements of MinnesotaCare, which do not apply to these Plaintiffs. Because they have not met the first element of

the constitutional requirements of standing, Plaintiffs have failed to meet their burden on the issue of reporting data.

■ The second flaw in Plaintiffs' argument is that they are effectively asking this Court to render an advisory opinion on this issue. The fact that the State might at some future point revise the reporting requirements to make them applicable to the Plaintiffs does not present a justiciable issue for this Court. " '[T]he oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions.' " *Flast v. Cohen,* 392 U.S. 83, 96–97, 88 S.Ct. 1942, 1950–51, 20 L.Ed.2d 947 (1968) (quoting C. Wright, the Federal Courts 34 (1963)).

Because Plaintiffs have failed to demonstrate that they have standing to challenge the data reporting requirements of MinnesotaCare, their challenge to those provisions must fail. Accordingly, summary judgment is granted in favor of Defendants on the issue of data reporting requirements.

### 2. Spending Cap Provisions

■ Similar problems arise in connection with the Plaintiffs' arguments against the spending cap provisions of MinnesotaCare, which apply to "health carriers." Minn.Stat. § 62P.04 (Supp.1993). Because Plaintiffs are not within the statutory definition of "health carriers," *see* Minn.Stat. § 62A.011 (Supp. 1993), they are not subject to the regulation limiting increases in costs. Thus, there is no basis for Plaintiffs' claim that "to the extent that the Trust is required to comply with spending caps imposed by the Minnesota-Care legislation, The Plan would have to monitor claims expenses during a calendar year to forecast whether claims expense will potentially exceed the amount authorized by statute." (Pltfs.' Memo.Supp.Summ.J. at 15.) The Plaintiffs are not required to comply with the spending caps to *any* extent.

As with the data reporting requirements, Plaintiffs are unable to show an injury in fact resulting from the spending cap provisions. Because Plaintiffs have again failed to establish the elements of standing discussed above, summary judgment is granted in favor of Defendants on the issue of the spending cap provisions of MinnesotaCare.

### 3. Provider Tax

■ Plaintiffs' primary claim relates to the provider tax under MinnesotaCare. According to Plaintiffs, the provider tax is preempted by ERISA insofar as that tax is passed through to the Plans.[3] Because the Plaintiffs have shown injury in fact that is caused by the statute and that could be redressed by a decision in their favor, they have met the minimum constitutional requirements for standing. *See Lujan,* —— U.S. at ——, 112 S.Ct. at 2136.

■ Turning to the merits, the Court must determine whether the provisions of MinnesotaCare that impose the provider tax "relate to" the Plaintiffs' employee benefit plans and are thus within the scope of ERISA's preemption clause. In *Arkansas Blue Cross & Blue Shield v. St. Mary's Hosp., Inc.,* 947 F.2d 1341, 1344–45 (8th Cir. 1991) [hereinafter *Arkansas BCBS*] the Eighth Circuit listed a number of factors to be considered when determining whether a state statute of general application is preempted by ERISA. Those factors are as follows: 1) whether the state law negates a provision of an ERISA plan, 2) whether the state law affects relations between primary ERISA entities, 3) whether the state law has an impact on the structure of ERISA plans, 4) whether the state law has an impact on the administration of ERISA plans, 5) whether the state law has an economic impact on ERISA plans, 6) whether preemption of the state law is consistent with other ERISA provisions, and 7) whether the state law is an exercise of traditional state power. *Id.*

**3.** Defendants argue that there is no state action with respect to the "non-statutory passthrough" of the provider tax. (Defs.' Memo.Opp.Summ.J. at 12–13.) Because ERISA's preemption clause on its face extends to both direct and indirect regulation by the State, 29 U.S.C. § 1144(a) and (c), the Court is convinced that there is sufficient state action for the Court to reach the issue of ERISA preemption. The Court also notes that Plaintiffs' claims are not barred by the Tax Injunction Act, 28 U.S.C. § 1341 (1988). *See The Travelers Ins. Co. v. Cuomo,* 14 F.3d 708, 713–14 (2d Cir.1993) (ERISA confers exclusive jurisdiction on federal courts).

Before applying the *Arkansas BCBS* factors, the Court must determine whether the statute is one of "general application." "For ERISA purposes, a law of general applicability is one which does not treat ERISA plans differently from non-ERISA plans." *New England Health Care Employees Union Dist. 1199 v. Mount Sinai Hosp.*, 846 F.Supp. 190, 198 n. 11 (D.Conn. 1994). Courts have held that statutes that do not explicitly refer to a benefit plan are statutes of general application. *Minnesota Ch. Ass'd Bldrs. & Contrs. v. Minnesota Dept. Labor & Indus., et al.*, Civ. No. 4–92–564, slip op. at 4 (D.Minn. Nov. 1, 1993); *NYSA–ILA Medical & Clinical Serv. Fund v. Axelrod*, No. 92 Civ. 2779, 1993 WL 51146, at *3 (S.D.N.Y. Feb. 23, 1993). Minnesota-Care's provider tax does not apply to ERISA plans differently than non-ERISA plans. The statute does not explicitly refer to ERISA plans or apply primarily to such plans; it applies to all health care providers, and the passthrough of the tax potentially affects all third-party purchasers. Therefore, the statute is one of general application, and the *Arkansas BCBS* factors are relevant.

### a. Negation of a Plan Provision and Relation to Other ERISA Statutory Provisions

First, the Court considers whether Minne-sotaCare's provider tax negates a plan provision or relates to other ERISA statutory provisions. A state statute that negates a plan provision may be found to be preempted by ERISA. *Arkansas BCBS*, 947 F.2d at 1345. Plaintiffs contend that, by raising costs to the Plans, the provider tax contravenes provisions of the plan as well as a provision of ERISA itself. 29 U.S.C. § 1103(c)(1) provides that "[t]he assets of a

plan ... shall be held for the exclusive purpose of providing benefits to participants in the plan and their beneficiaries." According to Plaintiffs, the MinnesotaCare Law increases costs to employee benefit plans in order to provide benefits to uninsured individuals who are not beneficiaries of the plans and thus violates the "exclusive benefits" provision of ERISA.

Plaintiffs' argument stretches ERISA's exclusive benefit provision beyond the bounds intended by Congress. Section 1103(c)(1), along with other sections such as 29 U.S.C. § 1104(a), sets forth a number of fiduciary duties for plan administrators and employers. Congress did not include these provisions in order to limit the costs to plans under ERISA; it included these provisions in order to make the law of trusts applicable to the plans and to eliminate "such abuses as self-dealing, imprudent investing, and misappropriation of plan funds."[4] Congress was not concerned with whether persons not covered by ERISA plans were somehow benefitted by the operation of those plans.

In *United Wire, Metal and Mach. Health & Welfare Fund v. Morristown Memorial Hospital*, 995 F.2d 1179 (3d Cir.1993), the parties arguing in favor of preemption raised a similar argument regarding the exclusive benefits provisions of ERISA. The Third Circuit refused to accept the argument, stating,

[T]here are many forms of state regulation under the police power which result in increases in the cost of doing business and corresponding increases in prices where the beneficiaries of the regulation are not those who are paying the increased prices. States have recently begun to regulate the disposal of medical wastes, for example, in order to protect those who would otherwise be adversely affected by socially irre-

---

4. *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 15, 107 S.Ct. 2211, 2219, 96 L.Ed.2d 1. Senator Williams made the following remarks in discussing the Conference Report on ERISA in 1974:

Despite the value of full reporting and disclosure, it has become clear that such provisions are not in themselves sufficient to safeguard employee benefit plan assets from such abuses as self-dealing, imprudent investing, and misappropriation of plan funds.... Accordingly, the legislation imposes strict fiduciary obli-

gations on those who have discretion or responsibility respecting the management, handling, or disposition of pension or welfare plan assets. The objectives of these provisions are to make applicable the law of trusts; to prohibit exculpatory clauses that have often been used in this field; to establish uniform fiduciary standards to prevent transactions which dissipate or endanger plan assets; and to provide effective remedies for breaches of trust.
120 Cong.Rec. 29,932 (1974).

sponsible disposal. Such regulations can significantly increase a hospital's cost of doing business and, accordingly, its billings to plan participants. We are confident, however, that ERISA was not intended to foreclose a state regulation of this kind. *Id.* at 1196. The court also held that evidence regarding congressional intent did not support Plaintiffs' argument: "In short, if ERISA is held to invalidate every. State action that may increase the cost of operating employee benefit plans, those plans will be permitted a charmed existence that never was contemplated by Congress." *Id.* at 1194.

Because the provider tax does not negate a plan provision or conflict with other ERISA statutory provisions, these factors do not favor a finding of preemption.

### b. Effect on Primary ERISA Entities and Impact on Plan Structure

Next, the Court considers the statute's effect on primary ERISA entities and impact on plan structure. The Eighth Circuit treats these two factors as identical. *Arkansas BCBS,* 947 F.2d at 1346. If the state law alters the relationships among the primary ERISA entities—the employer, the plan, the plan fiduciaries, and the beneficiaries—and thereby alters the structure of the plan, this factor weighs in favor of preemption. In *Arkansas BCBS,* the court found that this factor "strongly support[ed] a finding that the [Arkansas] assignment statute 'relate[d] to' ERISA plans." The statute in that case significantly altered the plan structure by transferring the power to determine who could receive benefits under a plan from a plan fiduciary to plan beneficiaries. In this way, the statute had an effect on the relationships between primary ERISA entities that was "not a 'tenuous' impact on the plan." *Id.*

Unlike the Arkansas assignment statute, MinnesotaCare's provider tax does not alter the relationships between primary ERISA entities in any way. As Defendants point out, "None of the plans who have answered [Defendants' interrogatories] have identified any changes in the plan documents or any

other effect on plan structure or relationships in order to comply with the pass-through [of the provider tax.]" (Defs.' Memo.Opp.Summ.J. at 26 n. 15.)

Plaintiffs again assert that their "exclusive benefits" theory shows that the provider tax impacts plan structure. Because persons who are not plan beneficiaries receive benefits through the provider tax, Plaintiffs argue, those persons are effectively added as new beneficiaries to the plans. As discussed above, *see supra* part III.A.3.a, the exclusive benefits provision does not mean that every indirect benefit to persons other than plan beneficiaries is prohibited by ERISA. To say that these persons are converted into "beneficiaries" of the plans in some technical sense is overstating the case.[5] Such an interpretation would lead to the conclusion that every state law that results in any increased cost to a plan, such as a sales tax, environmental regulations, or minimum wage laws, are preempted by ERISA. Congress did not intend that ERISA would prevent states from passing laws that would have this type of minimal effect on plan structure.

Because the provider tax does not have any significant effect on primary ERISA entities, this factor does not support a finding of preemption.

### c. Impact on Administration of Plan

In *Arkansas BCBS,* the court found that the state assignment statute directly impacted both intrastate and interstate administration of ERISA plans. "By giving the plan beneficiaries sole control of assignments, the assignment statute imposes on the claims administrator the burden of determining whether and to whom the plan beneficiaries have made assignments and then paying the appropriate parties." 947 F.2d at 1346–47.

The MinnesotaCare provider tax, by contrast, does not impose an administrative burden. First, there is no significant intrastate impact. Plan administrators do not have to consider claims on an individual basis in or-

---

5. This Court declines to follow the decision of the United States District Court for the Eastern District of Louisiana in *Bricklayers Local No. 1 Welfare Fund v. Louisiana Health Ins. Ass'n,* 771 F.Supp. 771 (E.D.La.1991). First, that case ap-

plied Fifth Circuit rather than Eighth Circuit law. Second, the statute challenged in *Bricklayers required* hospitals to impose additional charges rather than merely permitting them to do so.

der to determine the proper payee. Defendants point out that,·

> None of the ... Plaintiffs identified any additional administrative actions taken or costs incurred as a result of the pass-through of the provider taxes. The only administrative inefficiency noted was that in the rare instances of hospitals that submit a separate billing for the provider tax, an extra administrative cost is incurred in processing that additional payment.

(Defs.' Memo.Opp.Summ.J. at 29.) The typical methods of passing through the provider tax are "including it in increased charges or by adding the passthrough as a separate item on the hospital bill." (*Id.*) Neither of these methods can be viewed as a significant burden on plan administrators. Thus, the provider tax does not impact intrastate administration.

Second, the provider tax does not affect interstate administration. Plaintiffs contend that there is an interstate impact because the plans will have beneficiaries in Minnesota who will be subject to the tax and others who will not be in Minnesota and therefore will not be subject to the tax. This minor difference in cost is not the type of impact found in *Arkansas BCBS*. There, the Arkansas assignment statute possibly could conflict with assignment statutes in other states, thereby requiring plan administrators to undertake detailed analysis with respect to each claim in order to resolve the claim properly. 947 F.2d at 1348. Here, no such potential conflict exists. Plan administrators need not be concerned about conflicting state laws.

Once again, Plaintiffs' responses to interrogatories do not support their allegations of impact on plan administration. Plaintiffs admit that their plans are presently equipped to accommodate differences in costs for similar procedures. They also concede that the amounts they pay for similar services at different locations can vary by more than two percent. (Defs.' Memo.Opp.Summ.J. at 30.) In addition to Plaintiffs' answers, independent sources have reported significant differentials in price for similar procedures both within Minnesota and in comparison with other states. *See* Wis. Dept. Health & Soc. Serv., *Health Care Data Report, Annual Report, Hospital Utilization and Charges in Wisconsin, January–December 1990* (1991);

Council of Hospital Corporations, *Revised Hospital Charges By Diagnosis Related Group* (1990).

Because the provider tax as it is passed through to plans does not pose significant additional difficulties for either intrastate or interstate administration of ERISA plans, the Court finds that this factor does not support a finding of preemption.

#### d. Economic Impact

The *Arkansas BCBS* court found the economic impact of a state statute on a plan to be "highly relevant to whether the ... statute 'relates to' ERISA plans." 947 F.2d at 1348. At the same time, the court "agree[d] that 'tenuous, remote, and peripheral' economic impact on ERISA plans, in itself, is not sufficient to find preemption." *Id.*

Recent decisions in other circuits have reached differing conclusions regarding the importance of economic impact as a factor in ERISA preemption analysis. In *E–Systems, Inc. v. Pogue,* 929 F.2d 1100 (5th Cir.1991), the Fifth Circuit stated that the economic impact of a state law on a plan could by itself warrant a finding of preemption. Similarly, the Second Circuit concluded in *The Travelers Ins. Co. v. Cuomo,* 14 F.3d 708, 721 (2d Cir.1993), that a state statute that imposes "a *significant* economic burden" on ERISA plans "relates to" ERISA and is therefore preempted. The Third Circuit, by contrast, held in *United Wire, Metal, & Machine Health & Welfare Fund v. Morristown Memorial Hospital,* 995 F.2d 1179 (3d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 382, 126 L.Ed.2d 332 (1993), that economic impact by itself is not sufficient to warrant a finding of preemption. Plaintiffs ask this Court to follow the Fifth and Second Circuits rather than the Third.

For several reasons, this Court is not persuaded that the *Travelers* and *E–Systems* decisions require a finding of preemption in this case. As Judge Cabranes noted in *New England Health Care Employees Union Dist. 1199 v. Mount Sinai Hosp.,* 846 F.Supp. 190, 197–98 (D.Conn.1994), "the *Travelers* court acknowledged that where the economic impact of a generally applicable state statute is 'de minimis,' the statute will

**1316**

avoid ERISA preemption.... In sum, under *Travelers*, an economic impact which is insufficient to affect the structure or administration of ERISA plans is insufficient to trigger ERISA preemption." As discussed above, the MinnesotaCare provider tax does not alter the structure or administration of ERISA plans. Therefore, even under the *Travelers* analysis, the statute is not preempted by ERISA.

Both the *E–Systems* and *Travelers* cases involved significantly different facts from the case at bar. In *E–Systems*, the challenged Texas statute applied an annual tax on each person " 'receiving any form of administrative or service fee, consideration, payment, premium, fund reimbursement, or compensation' for providing a service for [certain enumerated plans.]" 929 F.2d at 1101. The plans specifically listed in the statute were "virtually identical to those covered by ERISA." *Id.* Thus, the Texas law "related to" ERISA plans on its face and had a significant economic impact on ERISA plans. In contrast, the MinnesotaCare provider tax does not involve this direct taxation on services offered by ERISA plans.

*Travelers* also is distinguishable because the economic impact in that case was much greater than the small provider tax in this case. Under the New York statute in *Travelers*, ERISA plans faced significant surcharges of thirteen, eleven, and nine percent. 14 F.3d at 713. The Second Circuit drew upon the reasoning of *NYSA–ILA Medical & Clinical Servs. Fund v. Axelrod*, No. 92 Civ. 2779, 1993 Westlaw 51146 (S.D.N.Y. Feb. 23, 1993), in which the "court recognized that a *substantial* economic impact, standing alone, could be enough to bring ERISA's preemption clause into play." *Travelers*, 14 F.3d at 720–21 (citing *NYSA–ILA,* 1993 Westlaw 51146 at *4). Because the instant case does not involve "substantial economic impact," the *Travelers* rationale is not determinative.

The decision of the Third Circuit in *United Wire*, however, is on point. In that case, a number of self-insured employee benefit plans argued that ERISA preempted a New Jersey statutory and regulatory scheme aimed at reducing health costs. 995 F.2d at 1188–89. The court stated as follows:

New Jersey's scheme may increase the charges billed to ERISA plan participants for hospital services. This will mean that any plan which commits to pay all or some lesser percentage of a participant's hospital costs will be called upon to pay more in benefits than it otherwise would. This effect is not different in kind, however, from any state regulation that increases the cost of goods or services that hospitals consume and pass on in hospital costs, i.e., utility costs, the wages of its employees, waste disposal costs, etc. New Jersey's scheme does not direct ERISA plans to structure their benefits or conduct their internal affairs in any particular way. Nor does it deprive ERISA plans of any alternative they would otherwise have in these areas. Finally, since the cost of hospital services will necessarily vary from region to region, we fail to see how state regulation of hospital pricing like that chosen by New Jersey is likely to make interstate operation of an ERISA plan more difficult.

*Id.* at 1193. For the same reasons given by the Third Circuit in this discussion, which reveals the parallels between the New Jersey statute and the MinnesotaCare law, this Court finds that ERISA does not preempt the statute at issue here.

Plaintiffs contend that *United Wire* is flawed because the Third Circuit relied upon the earlier Second Circuit case *Rebaldo v. Cuomo*, 749 F.2d 133 (2d Cir.1984), *cert. denied,* 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985), which the Second Circuit overruled in *Travelers*. This criticism is unmeritorious. The Third Circuit was aware of arguments that *Rebaldo* was "no longer 'good law' in light of the Supreme Court's subsequent decision in *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990)...." 995 F.2d at 1194. It recognized that some of the *Rebaldo* analysis was rejected by the Supreme Court, yet found that other parts of the "reasoning remain[ed] persuasive." *Id.* Thus, the court only relied upon the portions of *Rebaldo* that it found convincing despite the Supreme Court's criticism of other aspects of the case.

Even if this Court does not rely on the *United Wire* decision, the *Arkansas BCBS*

decision shows that the Eighth Circuit does not favor a finding of preemption based on that economic impact alone. As the court specifically stated, "We do not believe that any one factor, by itself, is determinative of the ERISA preemption issue before the court today." *Arkansas BCBS*, 947 F.2d at 1345. In the same way, no single factor is determinative on the question of preemption in this case.

The economic impact of the provider tax is one factor to be considered along with others in deciding whether the state statute is preempted by ERISA. Because the Court finds that the economic impact of the provider tax is "tenuous, remote, and peripheral," *id.* at 1348, this factor does not favor a finding of preemption.

### e. Exercise of Traditional State Power

Finally, the Court notes that the passage of the MinnesotaCare Law is an exercise of traditional state power. Under their inherent police powers, states have long enacted statutes regarding health care. "The containment of hospital costs is an exercise of a State's police powers, which should not be superseded by federal regulations unless that was the clear intent of Congress." *Rebaldo v. Cuomo*, 749 F.2d 133, 138 (2d Cir.1984), *cert. denied*, 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985), *overruled by The Travelers Ins. Co. v. Cuomo*, 14 F.3d 708 (2d Cir. 1993). Nevertheless, the Eighth Circuit stated in *Arkansas BCBS* that it was not convinced that this factor properly bears on the question of whether a statute is preempted by ERISA. 947 F.2d at 1350. Therefore, the Court does not rely on this factor as either favoring or disfavoring a finding of preemption.

In sum, the *Arkansas BCBS* factors indicate that the MinnesotaCare provider tax is not preempted by ERISA. Therefore, the Court grants summary judgment in favor of Defendants on this issue.

### B. LMRA Claims

■■■ Plaintiffs assert that the MinnesotaCare provider tax also conflicts with the Labor Management Relations Act, (LMRA) 29 U.S.C. § 141 *et seq.*, and therefore it is preempted pursuant to the Supremacy Clause. U.S. Const. art. VI, cl. 2. In partic-

ular, they rely on 29 U.S.C. § 186(c)(5), which provides that employers' contributions made on behalf of employees under collective bargaining agreements must be held in trust for the exclusive benefit of the employees, their families, and dependents. The provider tax, Plaintiffs argue, violates this provision by requiring them to pay increased costs in order to benefit persons who are not members of the plan.

Plaintiffs misinterpret the meaning of § 186 of the LMRA. In *United Mine Workers of Am. Health & Retirement Funds v. Robinson*, 455 U.S. 562, 102 S.Ct. 1226, 71 L.Ed.2d 419, (1982), the Court discussed the reasoning behind the exclusive benefits provision.

> The section was meant to protect employees from the risk that funds contributed by their employers for the benefit of the employees and their families might be diverted to other union purposes or even to the private benefit of faithless union leaders. Proponents of this section were concerned that pension funds administered entirely by union leadership might serve as "war chests" to support union programs or political factions, or might become vehicles through which "racketeers" accepted bribes or extorted money from employers.

*Id.* at 571–72, 102 S.Ct. at 1232. Plaintiffs cite no cases in which a court held § 186 to preempt any imposition of state taxes or any other state law. As with Plaintiffs' arguments on the exclusive benefits provision of ERISA, the Court is unconvinced that the exclusive benefits provision of LMRA should be read to deny states the power to enact statutes such as the provider tax, which have only tangential impact on employee benefit plans. Because the Court does not find the MinnesotaCare law in conflict with the LMRA, summary judgment is granted in favor of Defendants on this issue.

## IV. CONCLUSION

In conclusion, the Court finds that the Plaintiffs do not have standing to challenge the data reporting provisions of the MinnesotaCare statute. The Court does not render a decision as to whether those provisions are preempted by ERISA because such a deci-

sion would be purely advisory. The Plaintiffs have also failed to show that they have standing on the issue of the spending cap provisions of the statute. Finally, the Court finds that the provider tax portions of the statute are not preempted by ERISA or the LMRA. For all of these reasons, the Court denies Plaintiffs' Motion for Summary Judgment and grants summary judgment in favor of Defendants.

Accordingly, **IT IS HEREBY ORDERED THAT:**

1. Plaintiffs' Motion for Summary Judgment (Clerk Doc. No. 14) is DENIED; and

2. Summary judgment is GRANTED in favor of Defendants; and

3. The Clerk of Court shall enter judgment as follows:

IT IS ORDERED, ADJUDGED AND DECREED that the Complaint is DISMISSED in its entirety.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**