William B. McCALLUM, Appellant,

v.

ROSEN'S DIVERSIFIED, INC., a Minnesota Corporation; Ludwig M. Rosen, individually; Elmer H. Rosen, individually; Thomas J. Rosen, individually; Rosen's Diversified, Inc., Employee Stock Ownership Plan and Trust; Ludwig M. Rosen; Elmer H. Rosen; Thomas J. Rosen; Richard Rosen; Robert Hovde; Jane Doe, David Roe; Sally Roe, whose true and correct names are unknown but who are, upon information and belief Administrators, Fiduciaries and Trustees of the Rosen's Diversified, Inc. Employee Stock Ownership Plan and Trust, Appellees.

No. 94–1278.

United States Court of Appeals, Eighth Circuit.

Submitted June 17, 1994.

Decided Dec. 6, 1994.

Karl L. Cambronne, Minneapolis, MN, argued (Alan B. Demmer and Stuart Bear appeared, on the brief), for appellant.

David L. Hashmall, Minneapolis, MN, argued (Joseph Schmitt appeared, on the brief), for appellees.

Before FAGG, Circuit Judge, ROSS, Senior Circuit Judge, and BEAM, Circuit Judge.

ROSS, Senior Circuit Judge.

Appellant William B. McCallum appeals from a district court decision concluding that his claim against Rosen's Diversified, Inc. (RDI), in which he seeks a court-ordered

valuation and buyout of his stock in RDI under Minn.Stat. § 302A.751, is preempted by section 514 of ERISA, 29 U.S.C. § 1144(a). We reverse.

Rosen's Diversified, Inc. is a closely held Minnesota corporation that owns several agri-business subsidiaries. RDI's capital stock consists of 515,000 shares of common and preferred stock held by twelve individuals, including appellant. RDI stock is also held indirectly by 600 participants in the company's employee stock ownership plan (ESOP).

Appellant was employed by RDI from 1984 until 1992 when he was terminated. He served originally as executive vice president and chief executive officer. He later became a director and a trustee of the ESOP. Appellant owns 12,000 shares of RDI stock, which he received as compensation in 1986, as well as approximately 3,300 shares which he owns through the ESOP. Appellant alleges that in January of 1991 he refused to sign an audit of the company because it misrepresented RDI's financial situation. According to appellant, the false audit would have been used to procure financing for the corporation in violation of federal law. Appellant was removed from his position as a board member and CEO in February 1991, allegedly as a result of his refusal to certify the audit results. He continued to receive his full salary of $100,000 per year until his employment was terminated in September, 1992.

From February to July, 1992, appellant and RDI negotiated for a buyout of his RDI shares. Appellant rejected an offer to purchase his stock based upon the most recent annual appraisal of the common stock by Dain Bosworth, Inc., asserting that the audit undervalued the company's worth by 20 million dollars. Appellant then filed this action against RDI, its directors and the administrators of the ESOP (appellees), alleging ERISA claims and seeking, among other things, a court-ordered buyout of his RDI stock pursuant to Minn.Stat. § 302A.751. Appellant based this latter claim on appellees' alleged fraud, embezzlement, tax fraud and wasting of corporate assets. Appellant requested that the court order RDI to purchase his shares at their fair market value as determined by the court. Appellant's action before the district court requested a buyout of both his 12,000 shares owned individually and his 3,300 shares owned through the ESOP. On appeal, appellant now seeks only a buyout of the 12,000 shares he owns individually.

The district court granted appellees' motion to dismiss and for summary judgment as to the ERISA claim. The court also dismissed appellant's claim under Minn.Stat. § 302A.751 (section 751 claim), concluding that the claim for a court-ordered valuation and buyout of his RDI shares under state law is preempted by ERISA, a comprehensive statutory framework which governs the administration of private employee pension and benefits plans. Two other state law claims were dismissed without prejudice.

■■■ Section 514 of ERISA explicitly preempts state laws that "relate to" any ERISA plan:

> Except as provided in subsection (b) of this section, the provisions of [ERISA] shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in Section 1003(a) of this title. . . .

29 U.S.C. § 1144(a). The United States Supreme Court has stated that ERISA's preemption provision is "virtually unique" due to its extraordinary breadth. *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 24 n. 26, 103 S.Ct. 2841, 2854 n. 26, 77 L.Ed.2d 420 (1983). In *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983), the Supreme Court stated that a "law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." Thus, not only are "state laws specifically designed to affect employee benefit plans," preempted, *id.* at 98, 103 S.Ct. at 2900, but also any law that has any "connection with or reference to" the plan. *Pilot Life Ins. v. Dedeaux*, 481 U.S. 41, 47, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987); *Shaw*, 463 U.S. at 96–97, 103 S.Ct. at 2899–2900. Notwithstanding the stated breadth of the statute,

however, "ERISA leaves room for complimentary or dual federal and state regulation," and only "calls for federal supremacy when the two regimes cannot be harmonized or accommodated." *John Hancock Mut. Life Ins. Co. v. Harris Trust & Savings Bank,* — U.S. —, —, 114 S.Ct. 517, 525, 126 L.Ed.2d 524 (1993). In fact, the Supreme Court has indicated that "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21; *see also Arkansas Blue Cross & Blue Shield v. St. Mary's Hosp.,* 947 F.2d 1341, 1344 (8th Cir.1991).

With this legal framework in mind, we turn to the state statute at issue in the present case. Minn.Stat. § 302A.751 provides that a court may order a corporate dissolution, buyout or other equitable relief when:

> [T]hose in control of the corporation have acted fraudulently, illegally, or in a manner unfairly prejudicial toward one or more shareholders in their capacities as shareholders, directors, or officers, or as employees of a closely held corporation.

Minn.Stat. § 302A.751(1)(b)(2). A court may also order such equitable relief when corporate assets are misapplied or wasted. *Id.* at § 302A.751(1)(b)(4). This statute creates a two-step process. The court must first determine whether the actionable conduct has occurred and is sufficient to entitle the shareholder to relief. After such a finding is made, the court may compel a buyout of the shareholder's shares at fair value. Absent an agreement between the shareholder and the corporation as to the fair value of the shares, section 751 instructs the court to determine the fair value of those shares. The grant of authority to the court in determining the fair value of the shares is absolute; it may employ any method "in its discretion [which it] sees fit to use, whether or not used by the corporation," Minn.Stat. § 302A.473(7).

■ Appellant does not dispute that section 751 is a state law and that the ESOP is an employee pension plan within the meaning of ERISA. The sole issue for determination, therefore, is whether appellant's claim for an appraisal and buyout of his RDI shares pursuant to section 751 "relates to" the ESOP and the ERISA-mandated valuations of RDI's shares so as to preempt appellant's claim. The appellees argue that a section 751 valuation of the 12,000 shares of RDI stock which he owns individually, will necessarily apply to the ESOP shares as well. As such, the appellees argue ERISA preempts appellant's request for a court-determined valuation of the stock because the valuation will interfere with the specific valuation procedures mandated by ERISA.

The district court agreed with the appellees and held that a court valuation of RDI stock pursuant to section 751 is connected to an ERISA plan because the valuation would apply to shares in the ESOP as well as the shares appellant owns individually. The court reasoned that a court determination of the value of RDI stock would impede ERISA's goal of avoiding conflicts between federal and state directives concerning pensions because ERISA contains specific guidelines regarding appraisals and determinations of the value of shares which might differ from those utilized by a court. The district court further concluded that appellant's claim under section 751 would be preempted even if the court attempted to utilize ERISA-mandated valuation methods because the statute provides that a plan's fiduciaries must determine the level of benefits participants are to receive and therefore does not permit a court to make such a determination.

We reject the argument that a court valuation made for purposes of section 751 must also apply to any subsequent valuation of ESOP shares. Rather, the court-ordered valuation can be specifically limited to the section 751 claim and it need not have any effect whatsoever on any subsequent valuation made by the ESOP trustees. While the ESOP trustees may use the court valuation as evidence of the stock's fair value, the trustees' rejection of this valuation and its independent calculation of such fair value will not be precluded.

Preempting a statute which is intended to apply only to stock outside of an ERISA plan

would have a far-reaching and unintended impact beyond the scope of ERISA. A court would be unable to determine the value of any assets which were held outside of an ERISA plan, if any like asset were also held in an ERISA plan. The theory would be the same as that advanced by appellees here: any court-determined valuation would "relate to" the ERISA plan. As we stated earlier, "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Arkansas Blue Cross & Blue Shield,* 947 F.2d at 1344 (quoting *Shaw v. Delta Air Lines,* 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21)). We conclude that section 751 does not relate to the employee benefit plan within the meaning of ERISA and, accordingly, ERISA will not serve to preempt appellant's section 751 claim.

We also note that appellant argues preemption is not appropriate in the present case because of ERISA's savings clause which provides that "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or *securities.*" 29 U.S.C. § 1144(b)(2)(B) (emphasis added). Because appellant failed to raise this issue before the district court and because we conclude that the court-ordered valuation does not relate to ERISA, we do not reach this issue on appeal.

Based on the foregoing, we reverse and remand to the district court for further proceedings consistent with this opinion.