**In re the COLUMBIA GAS SYSTEM, INC. and Columbia Gas Transmission Corporation, Debtors.**

**The COLUMBIA GAS SYSTEM, INC., Appellant,**

**v.**

**The FIRST NATIONAL BANK OF BOSTON, Trustee, Appellee.**

Nos. 91–803, 91–804.
Adv. No. 93–44.
Civ. A. No. 94–230–SLR.

United States District Court,
D. Delaware.

May 12, 1995.

Richard H. May, James L. Patton, Jr. and Robert S. Brady, Young, Conaway, Stargatt & Taylor, Wilmington, DE, for Columbia Gas System, Inc.

Michael B. Joseph, Ferry, Joseph and Fink, Wilmington, DE, and Peter W. Benner, Shipman and Goodwin, Hartford, CT, for First Nat. Bank of Boston.

## MEMORANDUM OPINION

SUE L. ROBINSON, District Judge.

### INTRODUCTION

This case comes before the court upon an appeal from an order of the Bankruptcy Court for the District of Delaware (the "bankruptcy court") denying appellant The Columbia Gas System, Inc.'s ("Columbia") motion for summary judgment against appellee The First National Bank of Boston ("FNB"). FNB is the successor in interest to the Indenture Trustee for certain debentureholders under an Indenture dated October 3, 1989 between the Employees' Thrift Plan of Columbia Gas System Trust (the "ESOP Trust"), Columbia and the Indenture Trustee.

For the reasons that follow, the bankruptcy court's order denying summary judgment will be affirmed.

### I. JURISDICTION

■ Appellant contends that this court has jurisdiction to hear this case pursuant to 28 U.S.C. § 158. (D.I. 6) Appellee does not dispute the existence of subject matter jurisdiction. "The Court, however, must make its own assessment to determine whether appellate jurisdiction exists." *In re Columbia Gas Sys.*, 146 B.R. 106 (D.Del.1992), *aff'd*, 50 F.3d 233 (3d Cir.1995).

■ Section 158(a) of Title 28 of the United States Code provides in pertinent part as follows:

The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. . . .

28 U.S.C. § 158(a). "In bankruptcy cases, the courts accord 'finality' a somewhat flexible pragmatic definition." *In re Columbia Gas Sys.*, 146 B.R. at 110 (citing *In re Taylor*, 913 F.2d 102, 104 (3d Cir.1990)). Relevant factors a court must evaluate are the following:

[T]he impact upon the assets of the bankrupt estate, the necessity for further fact-finding on remand, the preclusive effects of our decision on the merits on further litigation, and whether the interest of judicial economy would be furthered.

*In re Market Square Inn, Inc.*, 978 F.2d 116, 120 (3d Cir.1992) (quoting *In re Meyertech Corp.*, 831 F.2d 410, 414 (3d Cir.1987)). The most important of the above factors is the impact upon the assets of the bankrupt estate. *Id.*

In the case at bar, the court finds that the bankruptcy court's denial of appellant's motion for summary judgment had a significant impact on the bankrupt estate. Accordingly, this court finds that the bankruptcy court's action constituted a final order for purposes of § 158 and that this court has jurisdiction over the appeal.

### II. BACKGROUND

In 1958, Columbia adopted the "Employees' Thrift Plan of Columbia Gas System" (the "Plan") for the benefit of employees of its subsidiaries. Contemporaneously, Columbia established the ESOP Trust to hold, administer and invest Plan assets. Effective April 1, 1990, the Plan was amended to add a leveraged employee stock ownership plan ("LESOP") feature to the Plan. Under the LESOP feature, the ESOP Trust would borrow funds to be used to purchase Columbia stock to be held in a special fund for release and allocation to employees' accounts as the loan was repaid. To carry out this feature, debentures were issued by the ESOP Trust under an Indenture entered into between the ESOP Trust, Columbia and the Indenture Trustee. The Indenture was dated October 3, 1989. FNB is the successor in interest to the Indenture Trustee. Payment of the debt service on the debentures was guaranteed by Columbia.

In July 1991, Columbia filed in the bankruptcy court a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. The Indenture Trustee filed a proof of claim dated February 14, 1992 in the bankruptcy case. FNB subsequently initiated an adversary proceeding challenging Columbia's treatment of the employer match-

ing contributions made to the Plan since November 30, 1991, alleging tortious interference and breach of duty. On May 31, 1992, the ESOP Trustee failed to pay the interest and principal amounts due on that day, thereby defaulting under the Indenture. The ESOP Trustee similarly failed to make payments due on November 30, 1992 and May 31, 1993.

On May 14, 1993, before discovery in the adversary proceeding, Columbia moved for summary judgment on several grounds, including (1) preemption of FNB's tort claims by the Employee Retirement Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA") and (2) lack of standing otherwise to proceed under ERISA Section 502. On June 14, 1993, FNB filed its opposition to the motion for summary judgment. (*Id.*, Attachment 8) On June 28, 1993, FNB filed a motion for leave to amend its adversary complaint to restate its claim for tortious interference by separating it into two counts, one for tortious interference under state law, the other for tortious interference under federal common law, and to add a third missed payment date (May 31, 1993) to Count I (and by incorporation Counts II and III) and to its prayer for relief. (*Id.*, Attachment 9) This motion was subsequently granted, and the amended complaint was served on August 25, 1993. (D.I. 25, Attachment 12) On March 24, 1994, the bankruptcy court issued a memorandum opinion and order denying Columbia's motion for summary judgment, holding, *inter alia,* that (1) FNB's state law tortious interference claim was not preempted by ERISA, and therefore (2) Columbia's Section 502 standing argument was irrelevant and (3) it was unnecessary to address FNB's alternative argument that its cause of action might be sustained independently under federal common law. (D.I. 25, Attachment 13 at 4–8). This appeal followed.

## III. STANDARD OF REVIEW

The findings of fact of the bankruptcy court are reversible only if clearly erroneous. Bankruptcy Rule 8013; *In re Delaware & H.R. Co.,* 124 B.R. 169, 178 (D.Del.1991) (citing *In re Spada,* 903 F.2d 971, 975 (3d Cir.1990)). "Thus, a reviewing court will affirm the bankruptcy court's findings unless 'on the entire evidence [the court] is left with the definite and firm conviction that a mistake has been committed.' " *In re Delaware & H.R. Co.,* 124 B.R. at 178 (citing *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). Conclusions of law are freely reviewable *de novo. In re Abbotts Dairies,* 788 F.2d 143, 144 (3d Cir.1986). When findings of fact are based on an incorrect legal standard, those findings are subject to plenary review on appeal. *First American Bank v. Century Glove, Inc.,* 81 B.R. 274 (D.Del. 1988), *aff'd in part, Century Glove, Inc. v. First American Bank,* 860 F.2d 94 (3d Cir. 1988).

## IV. DISCUSSION

In its motion for leave to appeal, Columbia identified three questions to be raised on appeal:

[1]. Whether [FNB's] state law claim for tortious interference with contract is preempted by Section 514 of ERISA, 29 U.S.C. § 1144?

[2]. Whether the Federal Common Law developed under ERISA would recognize [FNB's] claim for tortious interference with contract?

[3]. Whether [FNB] has standing under Section 502 of ERISA, 29 U.S.C. § 1132, to bring a cause of action for tortious interference with contract if such claim is not preempted by ERISA or is cognizable under the Federal Common Law developed under ERISA?

(D.I. 25, Attachment 16 at 7) In its statement of issues on appeal, Columbia recharacterized these issues as follows:

1. [FNB's] claim for tortious interference with contract alleging Columbia's failure to comply with the terms of the Plan is preempted by Section 514 of [ERISA].

2. FNB has no standing to sue under Section 502(a)(3) of ERISA ... to bring a cause of action to enforce the provisions of the Plan.

3. The federal common law developed under ERISA would not create a cause of

action to enable FNB to enforce the terms of the Plan.

(D.I. 23 at 1) The court will consider the questions designated in Columbia's motion in the order presented in the statement of issues on appeal.

## A. ERISA Preemption

■ 29 U.S.C. § 1144(a) provides in relevant part that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." ERISA defines "State laws" as "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1). FNB's tortious interference claim clearly arises under state law.[1] Preemption therefore depends on whether the claim "relates to" the Plan.

The Supreme Court of the United States has stated that a law " 'relates to' a covered employee benefit plan for purposes of the [preemption clause] 'if it has connection with or reference to such a plan.' " *District of Columbia v. Greater Washington Board of Trade,* 113 S.Ct. 580, 583 (1992) (citations omitted). In the present action, the latter alternative can be ruled out, because the relevant law—a common law tortious interference claim—does not "refer" to an ERISA plan. As to the former alternative, the Supreme Court has recently decided that attempting to define "connection with" is "unhelpful" and "frustrating,"[2] and that, accordingly, courts must "go beyond" the text and "look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins.*

1. The elements of a cause of action for tortious interference with a contract "are not controversial. There must be (1) a contract (2) about which defendant knew and (3) an intentional act that is a significant factor in causing the breach of such contract (4) without justification (5) which causes injury." *Irwin & Leighton, Inc. v. W.M. Anderson Company,* 532 A.2d 983, 992 (Del.Ch.1987).

2. In seeking to find meaning in the terms "relate to" and "connection with," the Court noted:
    If "relate to" were taken to extend to the furthest stretch of its indeterminacy, then for

*Co.,* —— U.S. ——, ——, 115 S.Ct. 1671, 1676, 131 L.Ed.2d 695 (1995). The Court noted that it had found the purpose of § 514(a) to be

"to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government ..., [and to prevent] the potential for conflict in substantive law ... requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction." *Ingersoll–Rand,* 498 U.S., at 142, 111 S.Ct., at 484.

*Id.* The Court found that

[t]his objective was described in the House of Representatives by a sponsor of the Act, Representative Dent, as being to "eliminat[e] the threat of conflicting and inconsistent State and local regulation." 120 Cong.Rec. 29197 (1974). Senator Williams made the same point, that "with the narrow exceptions specified in the bill, the substantive and enforcement provisions ... are intended to preempt the field for Federal regulations, thus eliminating the threat of conflicting or inconsistent State and local regulation of employee benefit plans." *Id.,* at 29933. The basic thrust of the pre-emption clause, then was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans.

*Id.* at —— —— ——, 115 S.Ct. at 1676–78.

■ ERISA preemption, accordingly, is not unlimited. "Some state actions may affect employee benefits in too tenuous, remote, or peripheral a manner to warrant a

all practical purposes pre-emption would never run its course, for "[r]eally, universally, relations stop nowhere," H. James, *Roderick Hudson* xli (New York ed., World Classics 1980).... [In interpreting "connection with",] an uncritical literalism is no more help than in trying to construe "relates to." For the same reason that infinite relations cannot be the measure of pre-emption, neither can infinite connections.
    *New York State Conference of Blue Cross & Blue Shield Plans,* —— U.S. at ——, 115 S.Ct. at 1676.

finding that the law 'relates to' the plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983). Further, "the absence of a direct nexus to [an] ERISA plan[ ]" will put a cause of action "beyond the scope of § 514 preemption." *United Wire v. Morristown Mem. Hospital*, 995 F.2d 1179, 1195 (3d Cir.1993). In determining whether Congress intended that ERISA preempt a particular cause of action, courts have considered "the statute's express objectives, its structure, and its interpretation by the courts." *Robinson v. Fikes of Alabama, Inc.*, 804 F.Supp. 277, 280 (M.D.Ala.1992), citing *FMC v. Holliday*, 111 S.Ct. 403, 407, 498 U.S. 52, 57–58, 112 L.Ed.2d 356 (1990). "[A]n overarching consideration in the determination is that the preemption provision must be given a 'common-sense' effect." *Id.*, citing *Metropolitan Life Ins. Co. v. Commonwealth of Massachusetts*, 471 U.S. 724, 740, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985).

FNB's Count I ("tortious interference under state law") alleges that "[b]y knowingly and intentionally inducing or otherwise causing the ESOP Trustee to treat the contributions [made] to the Plan [after November 30, 1991] by [Columbia] and its affiliate companies improperly," i.e., "as ESOP Allocation Contributions, to be applied as ESOP Matching Allocations directly (or through the purchase of [Columbia] common stock) to the accounts of Plan Participants," Columbia "has tortiously interfered with, and continues to tortiously interfere with, the ESOP Trustee's obligation to comply with its obligations under Section 4.01 of the Indenture." (D.I. 25, Attachment 12 at 12, 14) Section 4.01 provides that the ESOP Trust shall pay to FNB the principal of, and interest on, the debentures on the dates and in the manner

provided in the debentures, i.e., in semi-annual installments on May 31 and November 30 of each year, with the final installment due on the debentures' maturity date of November 30, 2001.[3]

Columbia, citing *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), argues that this claim "relates to" the Plan because "the existence of the Plan is a critical factor in establishing liability under" the claim, in that "Columbia's alleged wrongdoing is the causing of contributions to the Plan to be applied contrary to the provisions of Section 4.3 of the Plan." Indeed, Columbia argues, "FNB has proven that the Plan is a critical element ... by pleading the provisions of the Plan in its Complaint and introducing it as an exhibit [to its summary judgment answering brief] and asking the Bankruptcy Court to interpret the language of the Plan." (D.I. 24 at 16)

Columbia bases its argument on a mistaken factual predicate and a misconstruction of *Ingersoll–Rand*. As to the former, Columbia is charged with liability in this count for its allegedly inducing the ESOP Trust to breach its duties under the Indenture, not for its alleged amendment or breach of the terms of the Plan. According to FNB, the allegedly improper designation of contributed funds merely provided the means to the inducement. Had such designation not caused the ESOP Trustee to default under the Indenture, and the action been directed simply to correct an error in administrative procedure, the court might well agree with Columbia that a challenge to the designation would be preempted by ERISA. This is not, however, the case here.

---

3. The bankruptcy court held that to find this claim preempted by ERISA would not promote the purpose behind the preemption provision, which is to prevent the introduction via a "patchwork scheme of regulations" of "considerable inefficiencies in benefit program operation, which might lead those employers with existing plans to reduce benefits, and those without such plans to refrain from adopting them." (D.I. 25, Attachment 13 at 6, quoting *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11, 107 S.Ct. 2211, 2217, 96 L.Ed.2d 1 (1987). According to the bankruptcy court,

> [i]f preemption were applied, it would bar FNB's action under state law. FNB cannot bring its action under ERISA because it lacks standing to sue under ERISA § 502, ERISA's exclusive enforcement mechanism.... Hence, preemption would bar FNB's state cause of action outside of ERISA and leave it without a cause of action within ERISA. The court concludes that because this claim does not fall within the scope of ERISA § 502, it is not preempted by ERISA § 514.

(D.I. 25, Attachment 13 at 8).

Nor does *Ingersoll–Rand* compel a finding of preemption. In *Ingersoll–Rand*, the Supreme Court held preempted a state cause of action the state supreme court had created as an exception to the at-will doctrine: the action allowed a terminated at-will employee to sue for recovery "when the plaintiff prove[d] that the principal reason for his termination was the employer's desire to avoid contributing to or paying benefits under the employee's pension fund.... [U]nder the [state] court's analysis," the Court found, "there simply is no cause of action if there is no plan." *Id.* at 140, 111 S.Ct. at 483–484 (emphasis added).

In the present case, the action is hardly so narrow. Indeed, the tortious interference claim, which is predicated on an alleged improperly induced breach of the Indenture, is conceptually incidental to the Plan. Indeed, the court finds FNB's count I more nearly analogous to the many cases brought in state courts for breach of contract between plan trustees and commercial third parties. *See Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825, 832–34, 108 S.Ct. 2182, 2187, 100 L.Ed.2d 836 (1988) (citations omitted) ("[L]awsuits against ERISA plans for run-of-the-mill state-law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan ... are relatively commonplace.") To adopt Columbia's rationale would be to hold that while a third party might sue an ESOP plan for breach of contract, it might not sue the sponsor of that plan for inducement of the breach, if such inducement had been effected by a directed reallocation of ESOP funds. Such a result would not further the purpose of the preemption provision and is not warranted on the present facts.

■ Columbia also argues that "the relief sought by FNB shows the link between its cause of action ... and the Plan." (*Id.* at 17) In its amended complaint, FNB requests one declaratory order and two injunctive orders, in addition to costs, fees and whatever other relief the court may find "just and proper." It appears to the court that the first two of these orders are irrelevant to the present appeal, because they arise from count III of FNB's complaint, and not from the counts at issue. The third order, which appears to arise from counts I and II, would "requir[e] [Columbia] to direct the ESOP Trustee to reallocate post-petition contributions to the ESOP Trust to ESOP Debt Service Contributions to the extent necessary to comply with the Indenture and the Plan, or, in the alternative, to instruct the ESOP Trustee to make the payments to the plaintiff due on May 31, 1992, November 30, 1992 and May 31, 1993 under the Indenture and the Plan from the assets of the ESOP Trust." Under the first scenario, FNB suggests, Columbia and its subsidiaries might satisfy both a hypothetical judgment and any assumed obligations to their employees by "mak[ing] greater contributions to the Plans in order to maintain allocations to participants at the same level." (D.I. 27 at 18) Of course, the bankruptcy court might opt instead to simply award FNB cash damages against Columbia and refrain from issuing any order in connection with the ESOP Trust. Because any hypothetical liability might be satisfied without implicating the rights of beneficiaries under the Trust, or indeed without implicating the Trust at all, the court declines to find that because FNB requested relief that might theoretically have so implicated the Trust and/or the beneficiaries, the count "relates to" the Plan and is thereby preempted by ERISA.

Lastly, Columbia cites to two appellate court decisions allegedly setting out factors relevant to a preemption analysis, all of which are allegedly satisfied on the present facts. Only one of these cases provides governing authority, and the court finds it unsupportive of Columbia's position. In *1975 Salaried Retirement Plan for Eligible Employees v. Nobers,* 968 F.2d 401, 406 (3d Cir.1992), the United States Court of Appeals for the Third Circuit found to be preempted by ERISA the breach of and interference with contract claims brought by a group of appellants' former employees. Appellees claimed a contractual right to be demoted from salaried positions back to union positions prior to their 1982 termination. Demotion would have resulted in their realizing substantially greater pension and related benefits. Appellees sought damages equal to these benefits. Applying *Ingersoll–Rand,* the Third Circuit found that "[i]f an ERISA plan did not exist, the appellees would never

have brought" the suit and that, furthermore, "the [trial court's] calculation of damages would involve construction of ERISA plans...." *Id.* at 406. Accordingly, the court held the claims preempted. In the present case, the nonexistence of the Plan would have mooted the action only because the ESOP Trust was a contracting party to the Indenture. Damages in the present case are similarly fixed by the Indenture, not the Plan. *Nobers* thus does not compel a finding of preemption.

Nor does *Arkansas Blue Cross & Blue Shield v. St. Mary's Hosp.*, 947 F.2d 1341 (8th Cir.1991) persuade the court to find count I preempted. *St. Mary's Hosp.* sets out seven factors to guide courts in the Eighth Circuit in determining whether a state law is preempted under ERISA:

> [1] whether the state law negates an ERISA plan provision, ... [2] whether the state law affects relations between primary ERISA entities, ... [3] whether the state law impacts the structure of ERISA plans, ... [4] whether the state law impacts the administration of ERISA plans, ... [5] whether the state law has an economic impact on ERISA plans, ... [6] whether preemption of the state law is consistent with other ERISA provisions, ... and [7] whether the state law is an exercise of traditional state power.

*Id.* at 1344 (citations omitted). Columbia argues that certain of the remedies requested by FNB will affect relations between primary ERISA entities: "If reallocation is granted, [for example,] ... the participating employers may have to make larger contributions to the Plan." Further, Columbia argues, FNB's action "will clearly affect the administration of and have an economic effect on the Plan by requiring additional con-

tributions and reallocation of contributions; and the enforcement of the claim is not consistent with other ERISA enforcement provisions contained in Section 502 of ERISA ... and is not the exercise of traditional state power." (D.I. 24 at 19)

Columbia's remedies argument is essentially a restatement of its "relief" argument, which the court has found insufficient to support a finding of preemption. Columbia's Section 502 argument misconstrues the relevant factor, which instructs courts to look not to whether enforcement is inconsistent with other ERISA provisions, but to whether preemption is consistent with those provisions. Lastly, the court finds Columbia's assertion that "the enforcement of [FNB's tortious interference claim] ... is not the exercise of traditional state power" to lack foundation. What Columbia evidently intends to argue here is that it would exceed traditional power for a state court to grant the above-referenced relief. Because a court might theoretically grant relief that would impact the designation of contributions to an ERISA Plan does not mean that the action for which such relief might be granted is necessarily preempted by ERISA.[4]

For the above reasons, the court will affirm the judgment of the bankruptcy court that FNB's state law tortious interference claim is not preempted by ERISA.

### B. Section 502 Standing

The bankruptcy court held, and this court agrees, that because FNB has not brought an action under ERISA, and because FNB's state law action is not preempted by that statute, the question of FNB's standing to bring an action under ERISA is irrelevant. Indeed, it appears to the court that Columbia

---

4. Columbia also argues that this court should hold that the count "relates to" the Plan because "the Plan Trustee has asked to intervene...." (D.I. 24 at 17) The fact that an ESOP Trust should seek to intervene in an action alleging tortious interference with a contract to which the Trust is a party is hardly surprising. Were the court to find the Trust's motion to intervene sufficient grounds to hold the action preempted, then no action alleging tortious interference with a contract entered into by an ESOP Trust would likely survive a preemption challenge. The count either relates to the Plan or it doesn't. The Trustee's determination that it does, even if

clearly expressed, cannot direct this court's resolution of the question.

In addition, Columbia contends that "FNB is not bringing a contract ... action. It is bringing an action to enforce the terms of the Plan. The only contact between FNB and Columbia is the Indenture, and under the Indenture, FNB's remedy against Columbia is limited to the Columbia Guarantee." In fact, FNB has brought an action for tortious interference with its contractual relationship with the ESOP Trust. Whether the Indenture limits FNB to seek from Columbia damages under the Guarantee is a question not before the court.

has employed this objection primarily as a means of reiterating its preemption arguments. The bankruptcy court's decision on this point will be affirmed.

### C. FNB's Federal Common Law Claim

FNB's count II alleges that acts by virtue of which Columbia should be held liable for state law tortious interference with contract also "constitute tortious interference in violation of the federal common law developed to effectuate the purposes of [ERISA]" (D.I. 25, Attachment 12 at 15) "In view of [Columbia's] preemption challenge," FNB successfully moved to amend its complaint to separate the state and federal common law tortious interference claims. The bankruptcy court found that the latter claim had been pleaded in the alternative, and therefore declined to rule on the merits of Columbia's motion for summary judgment on count II. This court agrees.

## V. CONCLUSION

For the foregoing reasons, the court will affirm the memorandum opinion and order of the bankruptcy court dated March 24, 1994 denying Columbia's motion for summary judgment. An order consistent with this memorandum opinion shall issue forthwith.